**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-015 |
| | ) | Electronically Filed |
| RIGONALDO N. DEMELIO | ) | |

## MEMORANDUM OPINION AND ORDER

**August 16, 2005**

### Introduction

On January 25, 2005, Defendant Rigonaldo N. DeMelio was charged in a grand jury

indictment with one count of "Threatening to Kill a Federal Officer," in violation of 18 U.S.C.

§115(b)(1). (Indictment, Document No. 9). The grand jury charged that, on or about the 5th day

of January 2005, Defendant threatened to "murder Robert Zalno, a Special Agent of the Federal

Bureau of Investigation ("FBI"), with intent to impede, intimidate, interfere with and retaliate

against Agent Zalno while he was engaged in or on account of the performance of his official

duties." (Indictment Memorandum, Document No. 10). The alleged threat was communicated

via telephone to Defendant's wife, Terri DeMelio, while Defendant was detained in the

Allegheny County Jail ("ACJ"). *Id*. Consistent with customary practice, the ACJ monitored all

inmate telephone calls except attorney-client calls.

Upon arraignment, Defendant entered a plea of not guilty before Magistrate Judge

Francis X. Caiazza. Subsequently, Defendant filed a motion and memorandum in support to

suppress evidence pursuant to Federal Rule of Evidence 501 and 18 U.S.C. §2518(10)(a). A

suppression hearing was held on April 26, 2005. For the reasons set forth below, Defendant's

motion to suppress will be denied.

1

## **Findings of Fact**

Based on the testimony adduced at the suppression hearing and this Court's credibility

determinations, the Court makes the following findings of fact:

1)  On January 5, 2005, Defendant was detained at the ACJ, Pod 3D, on unrelated state

charges. Further, Defendant was the subject of an ongoing FBI fraud investigation, which was

conducted principally by Special Agent Bob Zalno ("Zalno").

2)  The ACJ provides inmates with telephones for their personal use.  The ACJ telephone

system was installed by Verizon, Inc., and enhanced by phone monitoring equipment by X-

Tonics in 2000.  The telephone system and phone monitoring equipment functions in the

following manner: (1) the inmate will place an outside call by dialing the phone number of the

individual he wishes to contact; (2) when the call is answered, the systems plays a standardized

message in the English language that is audible to both parties to the call; (3) the message

informs the recipient:

(A) that he or she is receiving a collect call from an inmate within the ACJ,

(B) of the inmate's name if, and only if, the inmate wishes to identify himself by
speaking his name into the telephone,

(C)  that the telephone call is subject to monitoring by the institution,

(D)  and if the recipient wishes to accept the aforementioned condition, that the
recipient must indicate acceptance by pressing "eight" on the keypad.

If the recipient indicates acceptance, the telephone call proceeds; otherwise, the call is

terminated.[1]

---

[1]If an inmate's attorney provides his or her telephone number and proof of his or her
representation of a given inmate, ACJ personnel program the telephone system to exit out of
recording mode when an inmate attempts to place a call to the designated number. Thus,

3)  The ACJ's telephone system provides the system administrator with the ability to retrieve the contents of monitored calls for one year, after which the system records new calls over the most dated content.

4)  The ACJ's telephone system was properly functioning on January 5, 2005.

5)  On January 7, 2005, the United States Attorney directed a grand jury subpoena to Donna Mason, the ACJ's telephone system administrator, requesting that she supply recordings of all telephone calls between DeMelio and his wife on January 5, 2005, among other dates. Ms. Mason delivered the requested telephone recordings to the United States Attorney.

6) In the recorded telephone conversations, DeMelio specifically "addressed" and harangued Special Agent Zalno, stating, inter alia: "I know you're listening you f- - -ing f- - - -t;" "I'm talking to you jerk-off;" "if you're listening you come at me head-one;" and "you pay real good attention mother f- - -er."

 7)  On January 10, 2005, Magistrate Judge Francis X. Caiazza granted the United States Attorney's application to lodge a criminal complaint against Defendant based upon the affidavit of probable cause sworn to by Special Agent Robert Smith of the FBI.  Subsequently, on January 25, 2005, a grand jury indictment was issued charging  Defendant with "threatening to kill a federal officer."

8)  Upon being taken into custody at the ACJ, an inmate is confined to Intake for one to three days where he receives a copy of the Inmate Manual ("Manual") written in the English language. The version of the Manual that Defendant received is in dispute.  The current version

_____

privileged communication between an attorney and his or her client bypasses the monitoring system.

3

advises inmates that the ACJ monitors all inmate telephone calls.  The prior version did not indicate that such calls were monitored.

9) The telephones in Pod 3D are marked with placards advising inmates that calls are recorded. However, at times inmates remove or deface the placards. Corrections Officers are required to report the removal or defacement of the placards to their shift supervisor, thereby alerting Verizon to replace the placards upon periodic servicing of the ACJ's telephone system. A genuine dispute exists as to the number of placards, if any, that were actually in Pod 3D on January, 2005.

10)  The Court finds, based upon observation of Defendant, his demeanor, his routine use of aliases, his convictions for fraud, and his self-interest, that he is thoroughly unbelievable in every aspect of his testimony, which is contradicted by the evidence and by the recorded conversations themselves.

11)  The Court finds, based upon observation of Terri DeMelio, her demeanor, and her bias in this proceeding, that she also is unbelievable in her testimony.  Ms. DeMelio's testimony is contradicted by her knowledge of the preamble to the standardized message and the precise wording change to that message that calls "may be subject to" monitoring (prior version) to telephone conversations "were subject to" monitoring (new version).

12)  While the record is not free from all doubt as to whether the current inmate manual was displayed in Pod 3D and how many phones in Pod 3D displayed placards, what is free from all doubt is that DeMelio and his wife were actually aware that their telephone conversations were being monitored at all relevant times.

**Discussion**

**Federal Rules of Evidence 501**

Defendant argues that the recorded telephone conversations between Terri DeMelio and himself were "privileged and an improper evidentiary tool barred by Federal Rule of Evidence 501," *Id.* at 4-5.  Defendant claims "that Special Agent Zalno repeatedly monitored his marital conversations to gather evidence, that neither he nor Terri DeMelio waived their marital privilege or otherwise assented to the monitoring, and that since the telephone is the most readily available method to uphold his marriage, the FBI's monitoring of his telephone conversations interferes with his marital communications and marriage.

"[T]he availability of any privilege is governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience." *United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001), quoting Fed.R.Evid. 501; *United States v. Byrd,* 750 F.2d 585, 589 (7th Cir. 1984). One privilege that is rooted in the common law is the marital communications privilege. *Id*.  This privilege, which can be asserted by either spouse, applies only to communications made <u>in confidence</u> between the spouses during a valid marriage. *Id*.  <u>See</u> *Byrd*, 750 F.2d 590.   A communication is confidential if it is made privately by an individual to the individual's spouse and is not intended for disclosure to any other person. Thus, the privilege does not extend to those communications disclosed to third parties or made publicly.  <u>See</u>, <u>e.g.</u>, *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir. 1983), quoting Wright & Miller, <u>Federal Practice & Procedure</u> §406 2d (1983)  ([P]rivilege reaches only those communications made in confidence and intended to be confidential.).

Defendant's telephone conversations from ACJ are not privileged.  None of the monitored conversations indicate that the martial communications were confidential. To the contrary, prior

5

to the acceptance of Defendant's telephone calls, a standardized message notified both Defendant and Terri DeMelio that their conversations were monitored.  The Court does not believe either Defendant or Mrs. DeMelio when they say they did not hear this message.

Defendant had access to the Manual that discussed ACJ's policy of monitoring inmate telephone calls.  Placards located adjacent to inmate telephones further stated that telephone calls would be monitored.  While there may be a legitimate dispute as to wether Pod 3D displayed the current inmate manual with its explicit notice of monitoring and whether the telephones on Pod 3D displayed the placard notice, these factual disputes are immaterial. Defendant and his wife were actually aware their calls were being monitored.  Therefore, their conversations were not confidential.

**Title III of the Omnibus Crime Control and Safe Streets Act / Fourth Amendment**

Defendant argues that the recorded conversations must be suppressed pursuant to 18 U.S.C. §2518(10)(a) and the Fourth Amendment.  (Defendant's Brief at 5, Document No. 12). Defendant asserts that Special Agent Zalno "did not have a warrant, nor applied for an order under Title III" of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §2510 et. seq., to listen to the recorded marital conversations. *Id.* at 6.  Further, Defendant asserts that Zalno did not have probable cause or reasonable suspicion. *Id.*  "Rather, he simply listened for whatever evidentiary importance those conversations might have." *Id.*  Thus, Defendant argues that his privacy rights under Title III and the Fourth Amendment were violated.

Title III governs the interception of telephone communications:

Except as otherwise specifically provided in this chapter any person who--

(a) intentionally intercepts, endeavors to intercept, or procures any other person to

6

intercept or endeavor to intercept, any wire, oral, or electronic communication;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. §2511.

However, "it shall not be unlawful . . . for a person acting under color of law to intercept an . . . electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. §2511(2)(c). Title III further excepts any "telephone or telegraph instrument, equipment or facility, or any component thereof ... being used by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. §2510(5)(a).

"Consent may be express or may be implied in fact from surrounding circumstances indicating that the defendant knowingly agreed to the surveillance." *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996). "When someone voluntarily participates in a telephone conversation knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception." *United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003). See e.g. *United States v. Horr*, 963 F.2d 1124, 1125 (8th Cir.1992) (knowledge of monitoring plus voluntary use of telephone proved consent under 18 U.S.C. §2511(2)(c)). Further, information a person knowingly exposes to the public is not subject to Fourth

Amendment protection.  *Katz v. United States,* 389 U.S. 347, 351 (1967).  "The Fourth Amendment is not triggered unless the state intrudes into an area in which there is a constitutionally protected reasonable expectation of privacy."  *Van Poyck*, 77 F.3d 285, 290 quoting *New York  v. Class*, 475 U.S. 106, 106, 112 (1986) ("Such a constitutionally protected reasonable expectation of privacy exists only if (1) the defendant has an actual subjective expectation of privacy in the place searched and (2) society is objectively prepared to recognize that expectation.").

In *Van Poyck*, the United States Court of Appeals for the Ninth Circuit found neither expectation exited.  *Id.*  Rather,  "any expectation of privacy in outbound calls from prison is not objectively reasonable and the Fourth Amendment is not triggered by the routine tapping of such calls."  *Id. at 291.*  Thus, "no prisoner should reasonably expect privacy in his . . . calls."[2]  This Court agrees.

The telephone may be one of the most readily available means to Defendant to maintain his marriage.  However, this privilege is provided to jailed inmates only under certain conditions - - primarily, that telephone calls will be monitored.  Both Defendant and his wife impliedly consented to monitoring.  See *e.g. United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002); *United States v. Footman,* 215 F.3d 145, 155 (1st Cir. 2000).  A standardized message announced prior to the acceptance of each outgoing call informed Defendant and Terri DeMelio that conversations would be monitored.  Interestingly, Defendant even addressed Agent Zalno directly, showing and intimated that he knew or believed that Zalno was listening to the telephone calls.  For Mrs. DeMelio's part, in order to receive Defendant's telephone calls from

---

[2]The ACJ permits an attorney-client exception whereby properly placed telephone calls between an inmate and his attorney are not recorded.  See, *Findings of Fact No. 2.*

ACJ, she had to accept the condition that monitoring would occur by pressing "eight" on her telephone keypad.  Thus, Defendant's marital conversations on the telephones from the ACJ were exempt from Title III, and Defendant did not have a reasonable expectation of privacy in those calls.  Therefore, his Title III and Fourth Amendment claims are without merit.

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's motion to suppress (Document No.  12) is **DENIED**.

_____
Arthur J. Schwab
United States District Judge

cc: All counsel of record as listed below

Robert L. Downey, Jr., Esquire
319-B Maryland Avenue
Oakmont, Pennsylvania 15139

James H. Love, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15129