IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | **Criminal No. 05-015** |
| ) | Electronically Filed |
| RIGONALDO N. DEMELIO   ) | |

**Memorandum Opinion and Order**

**February 3, 2006**

### Introduction

Defendant Rigonaldo N. DeMelio was convicted by a jury on September 20, 2005, of one count of "Threatening to Kill a Federal Officer," in violation of 18 U.S.C. §115(b)(1). The indictment charged that, on or about the 5th day of January 2005, defendant threatened to murder Robert Zalno, who is a Special Agent of the Federal Bureau of Investigation ("FBI"), with intent to impede, intimidate, interfere with or retaliate against Special Agent Zalno while he was engaged in or on account of the performance of his official duties. The alleged threat was communicated via telephone to defendant's wife, Terri DeMelio, while defendant was detained in the Allegheny County Jail ("ACJ"). *Id*. Consistent with its customary practice, the ACJ monitored all inmate telephone calls except attorney-client calls, including the three calls and conversations between Mr. and Mrs. DeMelio on January 5, 2005.

Before the Court are defendant's Motions for a New Trial (Documents No. 46 and 56) which argue that defendant is entitled to a new trial based upon the following issues:

1.   Prosecutorial misconduct, when the AUSA invited the jury in his closing

argument to "stand in the shoes" of the victim, Special Agent Zalno. Defendant states that this statement was a blatant violation of the so-called "golden rule," and thus the Court should have declared a mistrial or, at the very least, given an immediate cautionary instruction to the jury.

    2.    Prosecutorial misconduct and trial court error in permitting a series of questions asked of Mrs. DeMelio on cross examination concerning 19 incidents of previous misconduct or criminal conduct by the defendant. Defendant claims that these incidents are irrelevant and improper because some of them involve conduct of which defendant had not been convicted or even had been acquitted, and that the prior convictions were improper hearsay that violated the "best evidence" rule.

    3.    Trial court error in its response to a jury question during deliberations.

    4.    Failure of the government to establish an essential element of the offense. The statute provides, in relevant part, that whoever "threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate . . . on account of the performance of official duties, shall be punished as provided in subsection (b)." 18 U.S.C. § 115(a)(1)(B), "Influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member." Defendant argues that when the AUSA

specifically told the jury that the government had no intention of proving that defendant impeded an investigation in any way, it abandoned an essential element of the offense, namely that defendant intended to "impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties."

For the foregoing reason, the Court rules that none of these issues has merit.

The "Golden Rule"

The parties had agreed to a substantive jury charge, later read to the jury, that instructed the jury that "it is not a legal requirement that the defendant communicate the alleged threat to the subject of the alleged threat. It is sufficient if the alleged threat is received by a third party, and that a reasonable person in the shoes of the speaker would foresee that the recipient, that is, the person who hears the alleged threat, would take the statement seriously." In his closing summation, responding to the defense presented through Mrs. DeMelio that her husband had merely been threatening lawsuits or disciplinary complaints against Special Agent Zalno, the AUSA asked the jury if, considering defendant's extremely volatile and violent temper to which his wife did attest, a "reasonable person in the shoes of Special Agent Zalno" would have taken defendant's recorded threats as threats to do bodily injury or worse. Transcript, September 20, 2005, at 97 (Document No. 55). Later, in his rebuttal argument, the AUSA argued to the jury that even if defendant had some reason to be "mad" at Special Agent Zalno because he thought his investigation tactics were wrong or that he had harassed Mrs. DeMelio,

defendant had no right to threaten to murder ("whack") him, and said "but put yourself in Zalno's shoes . . . ." Transcript, September 20, 2005, at 121 (Document No. 55).

Defendant objected to the AUSA's invitation to the jurors to place themselves in Special Agent Zalno's shoes, and requested a mistrial. The Court denied the objection and the request for mistrial. *Id*. Defendant did not request a curative or cautionary instruction and, knowing that lawyers frequently decline to request a curative instruction when the prejudicial remark was not glaring and giving such an instruction might bring undue focus to the allegedly prejudicial remark, the Court did not give one. *Id*. In general, the Court views the decision to review a cautionary instruction or not as a tactical decision belonging to counsel, and counsel in this case is an experienced, well-respected defense attorney.

Prosecutorial misconduct, including improper remarks made in closing arguments, may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Such misconduct must constitute a "'failure to observe that fundamental fairness essential to the very concept of justice.'" *Id.* at 642, (*quoting Lisenba v. California*, 314 U.S. 219, 236 (1941)). Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant. There are "some occurrences at trial [that] may be too clearly prejudicial for . . . a curative instruction to mitigate their effect." *Donnelly*, 416 U.S. at 644; *cf. Bruton v.*

4

*United States*, 391 U.S. 123, 135 (1968) (admission of codefendant's inculpatory confession too prejudicial to be cured through jury instruction). In making this determination, Supreme Court precedent requires the reviewing court to weigh the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence. *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001).

These remarks, taken in the context of the AUSA's entire closing argument, the fact that the "in the shoes" metaphor was used in the jury instructions at the behest of both counsel, albeit referencing the speaker's shoes, the government's theory of the case that defendant had threatened to murder Special Agent Zalno with the intent to retaliate against him while he was engaged in or on account of the performance of his official duties, and the defense that defendant's threats were misconstrued and were, instead, merely threats to take legal action against Special Agent Zalno, the Court finds the AUSA's unfinished suggestion that the jury place itself in Zalno's shoes, to be proper. The AUSA was not attempting to invoke sympathy for the plight of a defenseless victim; he was rebutting defendant's somewhat fantastic defense that, when he said he was going to "whack" Special Agent Zalno (among other threats and profanities hurled at Special Agent Zalno, who defendant believed was listening in on the jail phone conversations), he merely meant he was going to sue him.

<u>Prior Bad Acts</u>

The government certainly asked Mrs. DeMelio about many of the prior bad acts of fraud, deceit and violence, and defendant identifies 19 of them in his motion for a new

trial at paragraph 4(a)-(n).  Counsel did not object to many of these acts which he now claims prejudiced him and denied him a fair trial, nor did he object at trial that the prejudice of any bad act outweighed its probative value, ala Fed.R.Evid. 403, nor that such evidence was inadmissible under Rule 404(b) (prior bad acts).

     The Court agrees with the government that it was fair game to inquire of Mrs. DeMelio, on cross examination, if she knew of the series of prior bad acts and violent acts defendant had engaged in through the years and throughout her marriage, including her own PFA petition she had filed to prevent defendant's violence toward her. The government had to prove that "a reasonable person in the shoes of the speaker [defendant] would foresee that the recipient, that is, the person who hears the alleged threat, would take the statement seriously."  Mrs. DeMelio heard the alleged threats, and the AUSA's questions were meant to cast doubt on her assessment of the seriousness of defendant's threats to "whack" Special Agent Zalno, which threats she attempted mightily to downplay.

     Moreover, defendant did not exercise his right to obtain advance knowledge of the Rule 404(b) acts that the government might use against him at atrial.  If he had done so, he could have filed motions in limine to exclude any or all such acts.  With no advance testing of the admissibility of the various bad acts, the government asked Mrs. DeMelio if she was aware of the sundry items, and she either was or she wasn't. The government did not attempt to prove that defendant was guilty of any of the prior bad acts, only that Mrs. DeMelio knew he was capable and quite willing to make good on his threats of bodily

harm.

Defendant also argues that the Court should not have permitted testimony about the series of prior bad acts because the "best evidence rule" mandates that the court records of his convictions and criminal conduct should have been introduced instead. Federal Rule of Evidence 1002, commonly referred to as the best evidence rule, provides as follows: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." The Court notes that no "best evidence rule" objection was lodged at trial, and in any event, does not see how this rule is implicated by the government's cross examination of Mrs. DeMelio about her knowledge of defendant's record of abusive and violent conduct.

<u>Court's Response to Jury Question</u>

Shortly into its deliberations, the jury asked to replay the tape recordings of the jail phone conversations, and the Court provided them after consultation with counsel. Sometime after the tapes were played, the jury sent a question to the Court asking about the portion of its charge stating that "It is sufficient if the alleged threat is received by a third party, and that a reasonable person in the shoes of the speaker would foresee that the recipient, that is, the person who hears the alleged threat, would take the statement seriously." The question was "Who are the parties in this statement? Who is the third party? Who is the person who hears the threat? The wife or anyone listening to the tape?" Court Exhibit 2.

After soliciting the views of counsel, the Court answered the jury's question "Who is the person who hears the threat?  The wife or anyone listening to the tape?" as follows: "the answer to that question is: The wife or anyone who hears the threat, including by listening to the tape." Transcript, September 20, 2005 (Document No. 55), at 152. Defendant did not object following that response.

Defendant now suggests that this answer was incomplete and improper because the answer should have defined the recipient of the threat "from the perspective of a person of normal sensitivity and sensibility" which "invited" the jury to consider "the most sensitive people," as opposed to a "hardened" Special Agent such as Special Agent Zalno. Defendant does not articulate the manner in which he was prejudiced or how this answer was misleading, nor does he explain why he did not object to the answer when the Court gave it instead of acquiescing.  The Court finds the answer to have been an appropriate response to a direct question.

<u>Government's Failure to Prove Essential Element</u>

Defendant argues, without offering any authority, that when the AUSA told the jury it was not the government's theory that defendant intended to interfere with an investigation, the government necessarily conceded it could not prove an essential element of the case, namely that defendant intended to "impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties."  Brief for Defendant at 10. There is a short answer to this argument: as set forth above, the offense is stated in the disjunctive, and the government's theory was

8

retaliation, not interference with an investigation.  *See* 18 U.S.C. §115(a)(1)(B), "Influencing, impeding, *or* retaliating against a Federal official by threatening or injuring a family member."

For all of the foregoing reasons, defendant's motions for new trial will be denied by appropriate order.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record as listed below

Robert L. Downey, Jr., Esquire
319-B Maryland Avenue
Oakmont, Pennsylvania 15139

James H. Love, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15129