**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      )
                                  )       Civil Action No. 08-1167
      v.                         )       Criminal No. 05-015
                                    )       Electronically Filed
REGONALDO N. DEMELIO        )

**MEMORANDUM OPINION ON DEFENDANT'S
MOTION TO VACATE SENTENCE (DOC. NO. 95)**

### I.      Background

Defendant Regonaldo N. DeMelio (a/k/a/ Ronald Cooley) was convicted by a jury on

September 20, 2005, of one count of "Threatening to Kill a Federal Officer," in violation of 18

U.S.C. §115(b)(1). The indictment charged that, on or about the 5th day of January 2005,

defendant threatened to murder Robert Zalno, a Special Agent ("SA") of the Federal Bureau of

Investigation ("FBI"), with intent to impede, intimidate, interfere with or retaliate against SA

Zalno while he was engaged in or on account of the performance of his official duties. The

alleged threat was communicated via three telephone calls to defendant's wife, Terri DeMelio,

while defendant was detained in the Allegheny County Jail ("ACJ").

While incarcerated in the ACJ on unrelated charges, Mr. Demelio used the jail's

telephone system on January 5, 2005, knowing that the telephones were monitored and calls

recorded, to make profane and belligerent threats against SA Zalno, who was investigating him

for a criminal scheme to defraud insurers and mortgage lenders with regard to the purchase of his

marital residence.  Defendant was speaking to his wife, but addressed the FBI agent directly,

believing he was or would be listening to the recorded conversations.

At trial, defendant was represented by retained counsel, and the Court appointed an

Assistant Federal Public Defender ("AFPD") for sentencing.  On April 28, 2006, this Court

sentenced defendant to the statutory maximum term of imprisonment of 72 months, followed by

three years supervised release.  The 72 month term of  imprisonment represented an upward

variance from the advisory guideline sentence range of  37 to 46 months, which the Court

deemed necessary and warranted, in large part, because of defendant's extensive history of anti-

social, threatening and violent behavior which was not adequately reflected in his criminal

history point score and category.

On direct appeal, represented by another AFPD, defendant argued that the District Court

erred by admitting evidence of numerous prior violent acts; the jury had insufficient evidence to

convict him; and the District Court provided improper jury instructions.  Alternately, defendant

sought to vacate his sentence on the basis that the District Court failed to consider his mental

illness.

On December 26, 2007, the United States Court of Appeals for the Third Circuit affirmed

the conviction and sentence over all grounds raised, including this Court's admission of

testimony regarding prior bad acts of threatening and violent conduct. The Court of Appeals

noted that trial counsel had "objected only on the basis of relevancy and inflammatory effect, and

not on the basis of [Federal Rule of Evidence] 404(b)," and concluded that this Court "did not err

in permitting the government to present this evidence, which was relevant to the objective

element of the government's burden of proof."  Opinion of the United States Court of Appeals

for the Third Circuit (doc. no. 94-1), at 3; *United States v. Demelio*, 257 Fed. Appx. 511, 2007

WL 3374811 (3d Cir. 2007) (unpublished).  The United States Supreme Court denied

defendant's petition for a writ of certiorari.

## II.     Motion to Vacate and Preliminary Proceedings

On August 21, 2008, defendant filed a timely Motion to Vacate, Set Aside or Correct a

Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (doc. no. 95 at 05-cr-015)

raising several claims of ineffective assistance of trial counsel in violation of the Sixth

Amendment.[1]  First, defendant asserted that his trial counsel so thoroughly failed to prepare,

investigate and try the defense that he was effectively denied counsel altogether, and that under

*United States v. Cronic*, 466 U.S. 648, 659 (1984), counsel's failures were the sort of systemic

failure that require the Court to grant him relief without regard to a showing of prejudice, which

is presumed.

In an Opinion dated November 2, 2009 (doc. no. 118), addressing five pro se motions

relating to the Motion to Vacate, this Court found defendant's reliance on *Cronic* misplaced, as a

presumption of prejudice under *Cronic* is only appropriate in cases of complete absence of

counsel at a critical stage of the proceeding or circumstances of that same magnitude.  *Id.* at 466

U.S. 659 n.25-26.  Trial counsel's performance in this case did not approach the sort of denial of

counsel that might trigger *Cronic*'s presumption of prejudice.  See *Ditch v. Grace*, 479 F.3d 249,

256 (3d Cir. 2007) ("denial of counsel at any critical stage at which the right to counsel attaches

---

[1] The Court finds that counsel was ineffective under *Strickland* in failing to properly challenge, under Fed.R.Evid. 404(b), the government's prejudicial introduction of numerous prior bad acts of violence and threatening behavior and failing to request or proffer an appropriate cautionary instruction limiting the jury's consideration of such prior bad acts.  At least one of the other instances of alleged ineffective assistance of counsel, the failure to develop and present an expert psychiatric defense to the mens rea element of the offense, would appear to have arguable merit.  However, in light of the Court's ruling on the Rule 404(b) - *Strickland* issue, there is no need to address the other specific instances of claimed ineffective assistance of counsel.

does not require a presumption of prejudice. Rather, a presumption of prejudice applies only in

cases where the denial of counsel would necessarily undermine the reliability of the entire

criminal proceeding.") (citing *Hammonds v. Newsome*, 816 F.2d 611, 613 (11th Cir. 1987)

(interpreting *Cronic* in a limited fashion) and *Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir. 1985)

(applying harmless error analysis).

However, the Court found defendant's other assertions of ineffective assistance of counsel

to be of arguable merit. Section 2255 of Title 28 of the United States Code provides that:

> A prisoner in custody under sentence of a court established by Act of
> Congress . . . may move the court which imposed the sentence to vacate, set aside
> or correct the sentence. Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no relief, the court shall cause
> notice thereof to be served upon the United States attorney, grant a prompt hearing
> thereon, determine the issues and make findings of fact and conclusions of law
> with respect thereto. If the court finds that the judgment was rendered without
> jurisdiction, or that the sentence imposed was not authorized by law or otherwise
> open to collateral attack, or that there has been such a denial or infringement of
> the constitutional rights of the prisoner as to render the judgment vulnerable to
> collateral attack, the court shall vacate and set the judgment aside and shall
> discharge the prisoner or resentence him or grant a new trial or correct the
> sentence as may appear appropriate.

28 U.S.C. § 2255.

When a defendant brings a motion to vacate sentence pursuant to section 2255, the

district court has discretion whether to conduct an evidentiary hearing. *United States v. Lilly*,

536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir.

2005)). Exercise of that discretion is constrained, however, and the district court must hold an

evidentiary hearing "'unless the motion and files and records of the case show conclusively that

the movant is not entitled to relief.'" *Id.* (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59,

62 (3d Cir. 1989)). This is not a high bar for a movant to meet, especially since the court, in

considering a section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62); *see also* Rules Governing § 2255 Proceedings, Rules 4 and 8.

Thus, a section 2255 motion "'can be dismissed without a hearing [only] if (1) the [movant's] allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether [the] movant is entitled to relief." *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

The standard for deciding an ineffective assistance of counsel claim is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, a defendant must show (1) that his or her counsel's performance was deficient and (2) that he or she was prejudiced by it. *Lilly*, 536 F.3d at 195 (citing *Strickland*, 466 U.S. at 687). The Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *Booth*, 432 F.3d at 546 (quoting *McCoy*, 410 F.3d at 132 n.6).

Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his performance 'f[alls] below an objective standard of reasonableness,' given the particular circumstances of the case at hand." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009)

(quoting *Strickland*, 466 U.S. at 688). In reviewing counsel's performance, the court must be "highly deferential," which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (quoted in *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007)). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoted in *Hankerson*, 496 F.3d at 310). To rebut this presumption, the movant "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). However, the reviewing court may not, "with the benefit of hindsight, [] engage in speculation about how the case might best have been tried." *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998).

Under the prejudice prong of the *Strickland* test, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694). Accordingly, the movant will not be entitled to relief "unless [he or she] affirmatively establishes the likelihood of an unreliable verdict." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

In light of the foregoing standards, after reviewing the Motion to Vacate, the government's response, the briefs in support and in opposition, and the record, the Court was unable to conclusively state that defendant was not entitled to relief on his claims that trial

counsel[2] provided ineffective assistance of counsel in failing to object under Fed.R.Evid. 404(b) to the admission of prejudicial prior bad act evidence. Accordingly, the Court scheduled an evidentiary hearing on defendant's Motion to Vacate and appointed counsel for Mr. DeMelio.[3] See Rules Governing Section 2255 Proceedings, Rule 8(c).

After discussion with counsel at an evidentiary hearing on September 13, 2010, at which defendant was present, the parties agreed to continue the hearing, and thereafter submitted a joint motion to take and submit depositions (doc. no. 146) in lieu of the testimony that was to be presented at the evidentiary hearing. Depositions were noticed for Mr. DeMelio, Dr. Robert M. Wettstein, M.D., who had conducted a forensic, psychiatric examination of Mr. DeMelio,[4] and his trial counsel. The Court granted the request, and issued an order directing the parties to file Proposed Findings of Fact and Conclusions of Law on or before December 6, 2010.

The Court has carefully reviewed and evaluated the respective findings of fact and conclusions of law (doc. nos. 148, 149), the Exhibits, including the deposition testimony, submitted by the government (doc. no. 150), and the entire record in the case, including the transcripts of the trial, and is persuaded that trial counsel's failure to challenge prior bad acts prior to and during trial pursuant to Fed.R.Evid. 404(b) was deficient under prevailing legal norms, that defendant received ineffective assistance of counsel at his trial which greatly prejudiced him, and that counsel's ineffective assistance undermines the Court's confidence in

---

[2] Defendant's ineffective assistance of counsel claims are limited to the effectiveness of trial counsel's performance.

[3] The Court notes that on November 2, 2009, the United States Court of Appeals for the Third Circuit denied defendant's application for a writ of mandamus, see Mandate (Doc. No. 117), seeking to compel this Court to conduct an evidentiary hearing and grant habeas corpus relief.

4 One of the ineffective assistance of counsel claims raised in the Motion to Vacate is that counsel was

the jury's verdict.

### III. Findings of Fact

1. Trial counsel entered his appearance in this case on January 25, 2005, and also was retained by defendant to represent him in two cases in the Court of Common Pleas of Allegheny County in 2005, for $600.00.  This case was trial counsel's first federal trial.

2. Trial counsel and defendant had some serious differences of agreement in both this and the state criminal cases, and defendant asked him to withdraw or be removed in both and threatened him bodily harm, but eventually it seems that they resolved their differences.

3. Trial counsel communicated with Demelio through telephone calls, and between June 23, 2005, and the jury selection in this case that occurred on September 20, 2005, only visited Demelio once, 16 hours before trial on September 19, 2005.

4. Demelio threatened trial counsel on September 19, 2005, that if he stepped into the federal courtroom to represent him, defendant would knock him out.

5. Demelio and trial counsel never discussed possible defenses to the charges, and Demelio never gave trial counsel Demelio's medical records, nor was the retention of an expert to testify on possible defenses to the charges discussed, even though trial counsel knew that Demelio had been diagnosed with intermittent explosive disorder.

6. Robert Wettstein, M.D., examined Demelio on June 21, 2010, at the request of current counsel, and submitted an expert report stating his opinion that on January 5, 2005, he suffered from intermittent explosive disorder, post-traumatic stress disorder,

---

ineffective in failing to develop and present an expert psychiatric defense as to the requisite mens rea.

and bipolar disorder, and that, in his psychiatric opinion and to a degree of medical certainty, Demelio was manifesting intermittent explosive disorder on January 5, 2005, when he was talking to his wife on the ACJ telephone. As a result, Demelio became so enraged that his ability to coherently express himself and think clearly was disrupted. Demelio also, according to the Doctor, had a diminished ability to calm himself, organize his thinking, express himself, anticipate consequences, and plan for the future.

7.    Trial counsel did not want to retain an expert in this case because an expert would have testified that Demelio is "profoundly dangerous," because he believed experts are "the lowest form of testimony" even though "juries think . . . a great deal more of them then they should," and because counsel believed such testimony would expose Mr. Demelio's background, "everything he had ever done, everything he had not done."

8.    The government's case consisted of the testimony of FBI Special Agent Zalno and Donna Mason, an officer at the ACJ who authenticated and presented the ACJ recorded telephone conversations from January 5, 2005 in which defendant threatens and maligns SA Zalno, and rested its case. SA Zalno testified about the investigation of Demelio for a criminal scheme to defraud insurers and mortgage lenders he had been conducting at the time defendant made the threats against him.

9.    Other than the criminal scheme to defraud insurers and mortgage lenders, the government did not offer any evidence of defendant's other crimes or bad acts.

10.    After the government rested its case, trial counsel called Demelio's wife to testify at the trial to "humanize" Mr. Demelio, primarily by testifying as to how she still

loved him, they had reconciled, and they were trying to make it work.

11.     According to the government:

> After conversations with Demelio and Mrs. Demelio, [trial counsel] made the decision to call Mrs. Demelio as a witness. [Trial counsel] felt that he could not call Demelio, himself, because of his past criminal history, which included convictions for fraud and violent acts, and which would have put his credibility in question. [Trial counsel] wanted Mrs. Demelio to testify to show that Demelio was a human being, knowing that there were going to be issues that come up about Demelio's prior bad acts. [Trial counsel] wanted that to come out because Demelio's prior criminal history tended to establish that Demelio was not a person who plotted things out, he did not form a battle plan that he was going to act on, sometime in the future. Instead, his prior acts established that he was someone who acts instantaneously to threats. *[Trial counsel] was aware of Federal Rules of Evidence 403 and 404(b) and chose as a matter of tactics not to seek to exclude Demelio's prior bad acts. [Trial counsel] believed that Demelio's prior criminal acts were going to come out and thought it was best that it came from a defense witness i.e. Mrs. Demelio.* ([Trial counsel] dep at 16-21, Exhibit 1 at 16-21). [Trial counsel] was  aware that Agent Zalno, the victim of Demelio's threats, knew of Demelio's prior criminal history and his knowledge of that history would have been admissible. ([Trial counsel] dep at 52-53, Exhibit 1 at 52-53) (emphasis added).

Government's Proposed Findings of Fact and Conclusions of law (doc. no. 149),

at ¶ 15.

12.     Although the government rested its case with almost none of Demelio's

prior criminal and other bad acts having been brought out, trial counsel still

put Mrs. Demelio on the stand anyway, because her testimony "goes to

character."  On cross-examination, the prosecutor was only too pleased to

delve into matters casting light on defendant's character.

The prosecutor asked Mrs. Demelio if she was aware of the following:

that Demelio was convicted of the crime of Battery in Florida in 1992;  that in

1993 Demelio threatened a 13 year old with a gun; that in 1998 Demelio punched a Mark Lescott, pled guilty to disorderly conduct and paid his fines and costs with a bad check; that in 2003 Demelio punched a man in a bar for sitting on Demelio's bar stool, tried to strike the man with a beer bottle, but struck a woman with the bottle instead, and then gave the arresting officer a false date of birth; that in 2004, while on his way to court ordered anger management thereapy, Demelio was in a car accident with a young man, punched the young man in the face, took his driver's license and cell phone, and made threats concerning the accident victim; and that after another car accident in 2004 Demelio threatened one man with a knife, punched another man in the face, and "crunched some guy in the face with a cinder block" knocking out five of his teeth, busting the victim's jaw and giving the victim permanent nerve damage.

13.     Mrs. Demelio was also cross examined about a Protection from Abuse Act petition she had filed against her husband in which she stated that he threw a potted plant at her, smashed a chair, pulled a knife, grabbed her arm, hit her in her face, picked up and threw a treadmill, spit in her face, threatened to kill her, choked her, slammed her against a wall, kicked in kitchen cabinets, tossed over a refrigerator, chased her with a butcher knife, stabbed the hood of a car with a knife, and threw a cinder block at her car. The PFA petition also indicated there had been previous physical abuse.

14.     The prosecutor also cross-examined Mrs. Demelio, without objection, about her husband's falsification of tax returns, possession of guns, claims that

he was a member of the notorious Gambino crime syndicate, carried a knife at

all times, and got very violent when drunk.

15.      While trial counsel made a few objections on the basis of relevancy and

"best evidence" and the inflammatory nature of the other crimes and bad

conduct evidence, he did not object on the grounds that the probative value of

the prior bad acts evidence outweighed the undue prejudicial effect and was

inadmissible under Fed.R.Evid. 403 and 404(b). Moreover, trial counsel never

requested the prosecutor to delineate the purposes for which he was

introducing such evidence or request a limiting instruction at the time the prior

bad acts were introduced or in the final jury instructions.  Consequently, the

Court gave no such limiting instruction.

## IV.    Conclusions of Law and Rulings

### A.    Prior Criminal and Other Bad Conduct -- Rule 404(b) Standards

Rule 404(b) provides that evidence of "other crimes, wrongs or acts is not admissible to

prove the character of a person in order to show that he acted in conformity therewith . . . [but]

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed.R.Evid. 404(b).

The United States Court of Appeals for the Third Circuit recognizes that Rule 404(b) is "a rule of

inclusion rather than exclusion."  *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003)

(citing *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994)).  In general, the Court of

Appeals favors the admission of Rule 404(b) evidence when it is relevant for any purpose other

than to show the defendant's propensity to commit the charged offense. *United States v. Daraio*,

445 F.3d 253, 263 (3d Cir. 2006);  Givan, 320 F.3d at 460 (citing *United States v. Long*, 574 F.2d

761, 764 (3d Cir.1978)).

In *United States v. Morena*, 547 F.3d 191(3d Cir. 2008), where the Court of Appeals held

that flagrant violations of Rule 404(b) by the prosecutor amounted to prosecutorial misconduct,

that Court summarized the test for admissibility under Rule 404(b), as follows:

> A Rule 404(b) Federal Rules of Evidence analysis guides our
> determination that the government's systematic injection of
> evidence of drug use and dealing by Morena into the trial
> constituted prosecutorial misconduct in violation of due process.
> For prior "bad acts" evidence to be admissible, the Supreme Court
> has directed that (1) the evidence must have a proper purpose
> under Rule 404(b); (2) it must be relevant under Rule 402; (3) its
> probative value must outweigh its prejudicial effect under Rule
> 403; and (4) the court must instruct the jury to consider the
> evidence only for the limited purpose for which it is admitted.
> *Huddleston v. United States*, 485 U.S. 681, 691-692 (1988).
> Admission of bad acts evidence must be carefully scrutinized
> because, "[a]lthough the government will hardly admit it, the
> reasons proffered to admit prior-bad-act evidence may often be a
> Potemkin, because the motive, we suspect, is often mixed between
> an urge to show some other consequential fact as well as to impugn
> the defendant's character." *United States v. Sampson*, 980 F.2d 883,
> 886 (3d Cir.1992).

*Morena*, 547 F.3d at 194 (footnote and parallel citations omitted).

The United States Court of Appeals for the Third Circuit recently fleshed out the four

pronged test for admission of prior bad acts under Rule 404(b) in *United States Green*, 617 F.3d

233 (3d Cir. 2010).

(1)     **Proper evidentiary purpose.**  *Green*, 617 F.3d at 250.  A proper purpose is one

that is "probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. The

evidence must fit "into a chain of logical inferences, no link of which may be the inference that

the defendant has the propensity to commit the crime charged." *United States v. Himelwright*, 42

F.3d 777, 782 (3d Cir. 1994).  The government must articulate the proper purpose in specific

terms, so that the District Court may conduct an informed Rule 404(b) analysis.

(2) **Relevance**. *Green*, 617 F.3d at 251. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. This definition is "very broad." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004). Moroever, proof of bias is "almost always relevant," *United States v. Werme*, 939 F.2d 108, 114 (3d Cir. 1991), because a "showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 49 (1984).

(3) **Rule 403 Balancing**. *Green*, 617 F.3d at 250-51. If the government has proffered a specific proper purpose, and the evidence of other crimes or bad acts is relevant to that purpose, the District Court must conduct the balance set forth in Fed.R.Evid. 403, which provides a trial judge should exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.

(4) **Limiting Instruction**. *Green*, 617 F.3d at 251. Any risk of unfair prejudice must be minimized by the District Court's limiting instruction, which should carefully circumscribe the proper purpose for which the jury could consider the evidence. The importance of the cautionary, limiting instruction cannot be understated.

Left without guidance from the Court, a jury is free to consider the prior bad acts in whatever manner it deems fit. As explained in Wright and Graham, 22 Fed. Prac. & Proc. Evid. § 5249 (1st ed.), the "principal device for controlling the use of other crimes, wrongs, or acts is the limiting instruction." The Federal Practice and Procedure editors also note that, perhaps because

many legal critics are skeptical regarding the efficacy of such instructions and attorneys

sometimes prefer not to have the evidence emphasized by such futile exhortations (especially if

the prior bad acts reference was singular and fleeting), the trial judge is under no duty to give a

cautionary instruction *sua sponte*; rather, it must be requested by counsel. *Id*. If instructions are to

be given, they should be given twice, once when the evidence is about to be heard and again

when the case is submitted to the jury, and a good instruction should explain to the jury the

proper use of the evidence in specific terms and caution the jury not to consider the prior bad

conduct as evidence of the forbidden propensity to commit crimes. *Id*.

Thus, where defendant mounts a plausible challenge to the introduction of other crimes

and bad acts under the Rule 404(b) rubric, which in this district is generally done through pretrial

motions and proceedings, the proponent will have to provide notice of his intention to use the

evidence, and identify the specific, non-propensity purpose for which he seeks to introduce it.

*Green*, 617 F.3d at 249. Additionally, the trial court will be required to give an appropriate and

tailored limiting instruction upon request. *Id*. (citing *United States v. Kemp*, 500 F.3d 257, 296

(3d Cir. 2007).

## B.      Application

This Court finds that trial counsel's performance did not meet prevailing professional

norms, and that his deficient performance seriously prejudiced his client and undermines the

Court's confidence in the jury's verdict. In a misguided attempt to "humanize" his client, trial

counsel opened the door to a barrage of nasty, violent, abusive crimes and other bad acts that his

client had repeatedly engaged in, not to mention domestic abuse and frauds of various sorts, and

the prosecutor fully exploited the opening.

What few objections counsel made were half-hearted and were not based on the Federal Rules of Evidence, and did not give this Court the opportunity to conduct the careful weighing of probative value and undue prejudice under Fed.R.Evid. 403 and 404(b).

Moroever, pretrial motions asking the Court to direct the government to give notice of any Rule 404(b) evidence it intends to offer, and the specific reasons for which it will be offered, are Standard Operating Procedure in this District, and provide a mechanism for getting a ruling in advance of trial whether the government will be able to introduce such evidence. Not only did trial counsel fail to invoke this routine procedure, perhaps because this case was his first federal criminal trial, he also never requested or proffered a limiting instruction at any time, leaving the jury free to speculate how to factor defendant's amazing record of prior crimes and other bad acts into its evaluation and deliberations.

Mr. Demelio is not a sympathetic character. However, the Sixth Amendment to the United States Constitution entitles defendant to representation by reasonably competent counsel, whether retained or appointed. Trial counsel's performance in this case was woefully deficient, and it cannot seriously be argued that defendant was not prejudiced by counsel's inexplicable failure to invoke the protections of Rule 404(b) to prevent or at least limit the damage caused by the promiscuous introduction of a series of nasty and violent other bad acts and crimes.

For the foregoing reasons, this Court will grant defendant's Motion to Vacate, Set Aside or Correct a Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (doc. no. 95 at 05-cr-015), and will direct the government to retry defendant within 70 days of this Order, unless it files a timely appeal.  An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All ECF Listed Counsel of Record